Good morning, James Simmons for the City of Quincy. May it please the Court, the City is here before you today, the parties are before you, on a matter involving a Municipal Ordinance. We seek today to have this Court strike down a lower Court finding that a portion of our Ordinance relating to Apprentice Training violated the concept of ERISA preemption. If there's an injunction against that particular provision, we seek that that injunction be vacated and that the City be allowed to enforce its Apprentice Training requirement. The basis for that request, in part, arises out of what's known as the Market Participant Doctrine. Let me ask you, Mr. Timmons, did you argue that doctrine in the District Court? Well, we tried, Your Honor. Wait a minute, just let me tell you, I've looked at your papers on summary judgment and I haven't found a reference to it. Yes, Your Honor. Not a sentence, not a syllable. I've also read Judge Lobel's opinion and she certainly doesn't refer to it at all. So I ask you again, did you present that argument to the District Court? We did, but not at the summary judgment phase, Your Honor. There's a reference to it... Well, if you didn't present it at the summary judgment phase, isn't it waived? Well, I believe it is not, Your Honor, for this reason. We raised the issue before the Court coming out of the box when there was an injunction hearing. And the Judge explicitly said that she would not entertain our request that she revisit that issue. For that reason, in dealing with Judge Lobel, there was a little bit of a balance that I had to perform at the time because the Judge had six months earlier stricken an identical ordinance. So, having heard her on the matter indicate that she would not entertain it, I did not raise it again on summary judgment, but I felt the matter was preserved. But you didn't have any hesitancy in arguing your main argument that ERISA didn't reach the Supreme Apprenticeship Program? That's correct, Your Honor. Are you aware of any authority that says that because you raised the matter in opposition to a preliminary injunction, but then failed or elected not to raise it in opposition to summary judgment, you've preserved it for purposes of review of the summary judgment? No, I'm not, Your Honor. I'm not aware of that sort of authority. Would it be surprising if I told you that I've looked and haven't been able to find any such authority? No, it wouldn't because I conducted the same search, Your Honor. I understand. I thought where the question was open that I would raise it because of the significance of the matter. Now, I may, Your Honor, if it's agreeable, go forward briefly on the issue of market participant in the event that... You've got a limited amount of time. You use it any way you see fit. Thank you, Your Honor. I understand. The reason I believe this is significant and ask the lower court to review it is the fact that the city has a proprietary interest in public bidding projects. The way the state statutory scheme works, the focus is on lowest bidder. In the record, we have an affidavit from our mayor indicating that the purpose of the apprentice requirement of the ordinance was to have a trained, quality workforce on projects that were coming online in the city. That is particularly referenced in the mayor's affidavit, which is appended to our reply brief in paragraphs 9 and 10. In response to our argument, counsel for the appellee raises a couple of other paragraphs where we're talking about our residency requirement, paragraphs 11 and 12, and I agree that that concept doesn't apply. We were specifically focusing only on the quality of the workforce and sought, therefore, to participate as a market participant. The reason that is significant is the ordinance does not have the effect of law, which is the trigger for the preemption argument. Moving on to that, the first issue we have is that we are before you with parties that acknowledge that they did not fund their apprentice training programs out of fiduciary funds. These were funded out of general funds. Therefore, the very sort of funding mechanism that the ERISA statute is intended and designed to protect was not implicated in this case. But isn't it implicated, as do some of the alliance members? Well, the Merit Alliance makes that argument, Your Honor. In reviewing their complaint, paragraph 9 of their complaint makes reference to that. But what it says is that the particular members do not have apprentice programs. All they need to do, all that the city ordinance is mandating, is that they come up with a state program. Now, obviously, the But isn't that exactly what ERISA says, that you can't do by ordinances mandate an employee benefit structure? I mean, it's not a defense to an ERISA preemption claim that the employer, if it wished to do so, could devise a program and fund it outside of ERISA. Isn't that true? Well, it's not the desire of the employer that's critical here, Your Honor. No, no, it's the effect of the law. But the effect of the law is to mandate an employee benefit structure. And my understanding of the case law, which may be flawed, is that that is right in the wheelhouse of ERISA preemption. State laws that mandate the creation of covered employee benefit structures, like pension plans, apprenticeship plans, et cetera. Well, that's correct, Your Honor, to this extent. Much of what was in our ordinance was in the wheelhouse. And that's why we conceded early on in this matter. The apprentice training program is evidenced by the fact that these particular defendants funded it out of their general funds is not always part of an employee benefit plan. The discussion in our brief and the analysis of courts that are looking at this issue always focuses on what is the intention of ERISA. And the intention of ERISA is to protect the fiduciary funds that are held by employers. Well, that isn't presented here, and that's not what Quincy is mandating, that any type of particular program, particularly one that's funded, had we mandated a funded program, we know that it was guaranteed that the funding would be there. Quincy took a different route. It mandated an apprentice program that complied with the state, so we know that there would be some quality level to it. And essentially by complying with the state requirement about the quality of it, things were covered. The funding and how the employer got to that is not mandated by the city of Quincy. And the fact is these particular defendants show that ERISA doesn't apply to our ordinance because they've been able to comply with it without using ERISA funds. Okay, so that if it was conceivable for a corporation to do a pension plan without using ERISA funds, the city would be free to legislate about pension plans, mandate the imposition of particular pension plans, so long as it was possible for the employer to comply without using ERISA funds. Well, I think it's more the, at least as far as apprentice goes, your honor, we wouldn't get into the pension realm. We tried it. But what's the difference? The Supreme Court has said that apprenticeship programs are the type of employee benefit program that can be covered by ERISA. And so it all depends. Now, according to you, that doesn't stop you from legislating, mandating their existence, setting their requirements by incorporation of the Massachusetts standard, so long as the employer could comply without using a special ERISA fund. All right? So what I'm asking you is then that would apply, would it not, to health care plans, pension plans, any plan normally covered by ERISA, so long as the employer could comply without using ERISA funds, the city could be free to legislate on it, and ERISA would be a fiction. Well, you're correct about my argument, but I respectfully disagree with the fact that a pension plan fits into my argument because I agree with you that I don't see how the city could mandate a pension plan and an employer could somehow comply with that without running into the very types of accounting issues that arise under ERISA. The difference with the apprentice training, and this is what the Dillingham case is about, and a case that we focus on in our brief and we think that it's important, the difference there is you can comply readily without getting into the fiduciary area and without funding questions, without administration issues. We backed away from the health care, although health care in the New York State case was an area that was addressed, but we backed away from any of the areas that do trigger funding issues and stuck exclusively to the apprentice training. That's one of the reasons why the market participant doctrine here was so important. But it brings me back to the particular problem in this case of standing because I don't know that we would be before you had we raised pension issues because I don't think that the same sort of concessions by these plaintiffs would have been made regarding their pension program. I don't see how they could have funded it out of general funds. But I haven't heard an answer to the standing question that Judge McConnell raised at the outset, was we have uncontradicted an allegation by the trade alliance that some of its members do maintain or do not maintain these type of apprentice programs, but they want to bid on this job. Right, I think what's uncontradicted is simply a statement made in the complaint that they do not have apprentice programs. And the point that the city would make in response to that is, well, all our ordinance says is you need to have an apprentice program. We are not concerned with how you fund it. And it is that concern, it's that particular mandate. We're not mandating that the employer, through the use of ERISA funds or through the use of some employee benefit plan, comply. No, no, but ERISA programs are employee benefit plans. They are not necessarily covered by ERISA depending on how they're funded. Correct, Your Honor. So how can you mandate that an employer have one? And that is the connection with issue that is before the court. We've winnowed this down very much to the point where we're just talking about connection with and that's the argument here. And, Your Honor, with that, if there are no further questions, I'll rest. I think we've got the issue presented. You have a second issue here that I, at least, think may be more problematic than your first issue, and that's the question of whether attorney's fees were properly awarded against the city under the ERISA fee-shipping provision. Well, Your Honor, on that particular issue, I felt I had thoroughly briefed it, and the fact is attorney's fees were awarded on the apprentice training issue to Mr. Ross, who had no standing, really, to. That's the party to whom attorney's fees were awarded. But I believe that's fairly thoroughly briefed. Okay.  All right. Thank you, Your Honor. I want you to overlook it. Judge Thompson, maybe we should note that not only do we have an entire Rhode Island panel, but we have our first Rhode Island attorney arguing to the entire Rhode Island panel. Thank you. I was going to send my greetings from Rhode Island. Good morning, Your Honor. We are probably the only four people in the state who haven't yet moved to Florida. Well, I couldn't help but wonder if you all commuted up from Rhode Island this morning as I did. I suspect maybe some of you didn't. But if it pleases the Court, Christopher Whitney, Bruce Atwood on behalf of the Applebee's Council table with me, and Scott Pomeroy, my co-counsel on this case. I jump right to this issue of the market participation defense. Candidly, I have no recollection whatsoever of that issue having been raised at the preliminary injunction. I've looked at the record pretty carefully. I don't know about preliminary injunction. It sure wasn't raised in summary judgment. And, indeed, it wasn't even raised in the main brief in this Court. There's a one-sentence reference to it. That's correct, Your Honor. But it's not developed until the reply brief. That's correct. I will note that it is raised in affirmative defense in the answer that was filed by the appellants. But I would agree with Your Honor that it's something that was waived because it was not argued subsequently. I'd like to get right to the main issues regarding why Judge Zobel was correct in holding that this so-called Responsible Employer Ordinance, or REO, is, in fact, preempted under RISA under the connection with Prong. Actually, Justice Salia really cut right to the quick on that. First of all, all right, we're all judges, all right? So get the titles right. I'm fond of saying there's no justice in the Court of Appeals. Okay. Thank you. So, Judge Salia, I think you went right to the point, which is, as we've argued in our brief, this ordinance mandates an employee benefit structure within the meaning of that term, as has been discussed in the U.S. Supreme Court case law and in Dillingham and in the cases that had come post-Dillingham. For some reason, the appellants got fixated on this argument or this concept, which is not supported by the cases, that so long as the required apprenticeship program can be set up separately funded by general business assets, that that insulates this ordinance from a RISA preemption. It does not. What they've done is they have confused the two prongs of a RISA preemption. They've confused the reference to prong with the connection with prong. And the reference to prong, as Dillingham points out, Supreme Court in Dillingham, preempts state laws that apply exclusively and immediately to RISA plans and also if they make reference to an RISA plan. So the cases that discuss the reference to prong, including the Carpenters 26 case authored by Judge Selya, that case dealt quickly with the connection with prong. That was a challenge to the message-responding statute. And then Judge Selya focused in his opinion on the reference to aspect of the standard or the test. And that does talk about how plans are funded, because you're talking about whether an ordinance addresses itself to an RISA plan. It is true here. There's no question that under Dillingham, an apprenticeship program is not an RISA plan unless it is separately funded. A further error that the appellants make in their briefing is they state in footnote 8 that Judge Zobel made an error and erroneously applied the Simas versus Quaker fabric case. And I think it's important to look at that because basically what they're saying is that Judge Zobel did not recognize the distinction between an apprenticeship program funded under general assets and one that is separately funded. And so they, inciting to Simas, I'm sorry, I'm looking for that. I thought I had it ready. inciting to Simas, they basically say that what she did was that she didn't understand the distinction and they cite to her decision and they claim that in the decision she was actually relying upon the Simas case for the proposition that the apprenticeship programs that are mandated here are RISA plans. But in fact she did not. So they were referring to, this is Record Appendix 219 of Judge Zobel's decision. What she said is therefore the only question is whether Quincy's apprenticeship requirement has a quote connection with RISA's apprenticeship programs. She said it does. Quincy's regulation requires bidders to quote maintain or participate in a bona fide apprenticeship training program ellipsis that is approved by the Massachusetts Division of Apprenticeship Training, end quote. There's a docket reference. That's true by the way. First then, Quincy requires its bidders to have an apprenticeship program. Then she says, but compare, but CF, Simas versus Quaker Fabric Corp, a state statute that obligates an employer to establish an employee benefit plan is itself preempted, even though RISA itself neither mandates nor forbids the creation of plans, end quote. And in a footnote, they're ignoring the fact that she used a but compare quote, which in the blue book standard form of citation means it's an analogy to a position contrary to the main proposition. So I submit to you that fairly read, and as I've always read her decision, what she's saying is I know. I know that not all apprenticeship programs are RISA plans. I understand that. But nonetheless, she's saying this ordinance still mandates a benefit structure, the setting up of an apprenticeship program. And then she says, referring to the connection with Prawn, then she talks about how this administrative structure mandates substantive training programs, but beyond that, performance standards, record keeping, et cetera. And she concludes, so Quincy's regulation effectively makes Massachusetts standards mandatory for its bidder's apprenticeship programs, including any RISA apprenticeship programs. So she understands that under the connection with Prawn, a state act in order to be preempted under RISA does not have to deal exclusively with RISA apprenticeship plans. The fact it deals with both here, and it's never been a satisfactory response, as Appellant has argued from the outset that it's sufficient that let's talk about a multi-employer pension plan run by a national company. They argue that the ordinance doesn't compel that company that comes into Rhode Island and wants to bid on Quincy's work, doesn't compel it to alter its existing RISA plan, multi-state apprenticeship plan, assuming it has one. And that's my hypothetical, it does. It doesn't require that it alter it or that it set up a new one. It can set up a separate apprenticeship program that is not separately funded, and that's how it works its way around it. First of all, that isn't a legal standard for whether or not it's preempted. But beyond that, it undercuts the second of the two primary purposes or objectives of a RISA. And that is, as again is pointed out in the Carpenters 26 case citing two travelers in Dillingham, or at least travelers, that RISA, in addition to the funding issue, which of course is what the appellants focused on, they ignored the second objective, which is the uniform administration of employee benefits under RISA nationwide. And frankly, it's hard to imagine a more pernicious impact on uniform administration of RISA benefits on a nationwide basis than what happened here. Here's what we should keep in mind, that this is not a state statute, the Commonwealth of Massachusetts. And this is a local ordinance. The Commonwealth of Massachusetts has never in its history imposed a mandate that any contractor enroll in a state registered apprenticeship program. The Federal Fitzgerald Act, which is the sort of grandfather, if you will, or progenitor of all of this, which was first enacted in 1937, that has never mandated that any contractor create, participate, maintain an apprenticeship program. Never happened. What you have here is a local municipality that has mandated it and has gone further than that. And this is something that doesn't get any treatment in the appellant's brief. We've pointed it out and I think it's important. The city of Quincy has done more than say, if you want to work on our projects, you must have an apprenticeship program. If you don't have one, you've got to create one. You have to make sure it's registered with the Commonwealth of Massachusetts, Division of Apprenticeship Training, and you have to employ apprentices on this project. All of this for all apprenticeable trades in your workforce. And finally and importantly, you have to graduate and advance your apprentices each year. Within the 12 months prior to the bid, you must have graduated an apprentice and advanced your other apprentices. Now, that's basically what Quincy has done. I'm sorry, by comparison, here's what Massachusetts requires. Before you go off on that, you're about to run out of time and you haven't yet mentioned the fee shifting provision, where I think you've got some obstacles. You may want to consider using some of the time. Thank you, Your Honor. I will, but before I get to it, I want to quickly address the standing issue because I haven't heard any real focus on it, but I do want to point out appellants make a very big deal about how supposedly we don't have standing. They erroneously argue that only a plaintiff with an ERISA apprenticeship program that is a separately funded plan has the standing to bring this challenge. There is no case law citation for that proposition. It's unsupported by the law. We've given you the law, basic law in standing, Article III standing, injury, etc., and we have alleged those injuries, by the way. Our complaint has several allegations of such, including the two named plaintiff companies, Grisecci and D'Agostino. If you look at Paragraph 55 of our complaint, we specifically allege injury, specifically allege the application of this ordinance drives up their costs and caused them injury and caused them not to bid on this work. So it isn't just the association of standing, which we do have as to the other MCA members, but actually the two named companies have led injury and have standing, and there shouldn't be any doubt about that. In their standing argument, and I will turn quickly, Your Honor, to the fees, but in their standing argument, they clearly misunderstand standing, and they make the argument that there can be partial ERISA preemption. They essentially say that it may be that this ordinance is preempted as to ERISA plans, but that doesn't mean it's preempted as to your plaintiff programs, which may not be ERISA plans. And there's no support for that. An example of that is at page 35, where they say, therefore, even if ERISA would preempt the REO to the extent it affects an apprenticeship program governed by ERISA, such a ruling would not affect any of the plaintiffs here. That simply is not the law. And then finally, the ultimate point they make, and the linchpin to their argument on ERISA, is they say that we have no standing as plaintiffs because we have not established that at least one of our plaintiffs has an ERISA-funded apprenticeship plan. That's their position. They're wrong. As we've argued in our brief, there's no requirement that we show that. I cite you the Wright case, the 2003 8th Circuit case, which addresses that issue. Turning to the attorney's fees, as we pointed out, the essence of the argument under ERISA, section 1132 G1, we know what their position is. They say that we didn't clearly raise that in the complaint. They say that Mr. Ross, who is a member of a 401k benefit plan, ERISA plan, can't be awarded attorney's fees for arguments on a separate area of this REO, meaning the apprenticeship provision. They claim that therefore there is no standing. Well, first of all, under Wright, I don't think it's true. It's not a standing question. All right? Of all the things they say, there are two of them that I think require some action, some response. First, they say that there's no claim here, all right, under this chapter, that what you have here is a request for a declaratory judgment on preemption grounds, and that that's not a claim. The second thing that they say, which to my mind may be even more substantial, is that an award of fees has to be made to a person who is a participant, a beneficiary, or a fiduciary, all right, that these plaintiffs are none of those. Your answer to that seems to be, well, as long as someone is a participant in some plan, even though it's not a plan that has anything to do with the subject matter of this litigation, that's enough for fees. And I find that, A, unsupported by the cases cited in your brief, and, B, so sweeping as to be counterintuitive. That's what I really wanted you to comment on. I'm out of time, Your Honor. I'm sorry. I'd be happy to comment if you want to extend my time. Take a minute. Okay. So our answer to that, Your Honor, is that it is basically one of statutory construction interpretation. The preemption provision is in the same title or subtitle as this Section 1132G1 that provides for fees. Their argument, they may have the better argument on statutory construction, but it is not an absolute foregone conclusion that Mr. Ross, who is a member of the 401K, could not recover attorney's fees for the overall challenge on ERISA preemption. And the point of the matter is that they did not raise these issues until the motion for reconsider. They waived these issues, and, therefore, they've converted it to a manifest injustice of law. Manifest error. I'm sorry. Error and injustice. Two different things. I'm troubled by justice and injustice today, obviously, Your Honor. I apologize. So that's the main point we raised. Secondly, in terms of a claim, we don't have a traditional ERISA claim for benefits, but we have a claim of preemption. It is true that we didn't plead 1132G1 generally. We pled declaratory judgment. But we don't think, and Judge Zobel didn't believe, that that prevented us from accessing the attorney fee shifting provision under ERISA, given that we were looking for preemption under ERISA, Your Honor. Thank you.